UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

R&B DELIVERY, INC., and            )
TAYLORMAC ENTERPRISES,             )
INC.,                              )
                                   )
        Plaintiffs,                )
                                   )
v.                                 )   Case No. 1:17-cv-00241-JRG-SKL
                                   )
FEDEX GROUND PACKAGE               )
SYSTEM, INC., SUMMIT               )
LOGISTICS, INC., and BLAKE         )
FREEMAN,                           )
                                   )
        Defendants.                )

## **ORDER**

Before the Court are a motion to amend complaint [Doc. 26] and a motion to amend scheduling order [Doc. 27] filed by Plaintiffs R&B Delivery, Inc. and TaylorMac Enterprises, Inc. ("RDI,"[1] "TEI," and collectively, "Plaintiffs"). Defendant FedEx Ground Package System, Inc. ("FXG") filed a response in opposition [Doc. 30] to the motion to amend complaint, and Plaintiffs filed a reply in support [Doc. 31]. None of the defendants filed a response to Plaintiffs' motion to amend scheduling order, and the time for doing so has passed. These matters are now ripe.

### I.  BACKGROUND

This case arises from a dispute over contracts among package pickup and delivery carriers. The following is a summary of Plaintiffs' allegations. According to the original complaint, Plaintiffs each had agreements with FXG, wherein Plaintiffs delivered packages for FXG along specific routes [Doc. 1-2 at Page ID # 11]. Plaintiffs planned to sell their contracts/routes to a third

---

[1] The Court uses the abbreviations from Plaintiffs' complaint [Doc. 1-2].

party, Lakeshore Logistics, Inc. ("LLI"), in transactions that required the approval or cooperation of FXG. Plaintiffs were allegedly informed by a representative at FXG, Tommy Wheeler, that the sale to LLI would not be a problem [*id.* at Page ID # 12]. At the time, RDI's contract with FXG (referred to as an Independent Service Provider Agreement, or "ISP Agreement") was set to expire within a few months, and it appears the plan was for RDI to renew its contract with FXG, and then execute the sale to LLI. At some point prior to that time, however, FXG informed RDI that RDI's routes would be opened up to other carriers for bidding. Although FXG allegedly assured RDI that no other carriers would actually bid on the routes, another carrier (Defendant Summit Logistics, Inc., "SLI") did bid, and was eventually awarded a contract for the routes. This of course caused the sale of the routes by RDI to LLI to be cancelled; SLI later sold the routes to LLI [*id.* at Page ID # 12-14].

Under TEI's agreement with FXG (referred to as a Linehaul Agreement), TEI was required to get FXG's approval before selling its routes to a third party. Twice, TEI requested FXG's approval to sell its routes to LLI, but FXG refused both times, allegedly without giving a reason [*id.* at Page ID # 15].

Plaintiffs originally asserted claims for fraudulent misrepresentation and tortious interference with business relationships against FXG, and claims for tortious interference with contract and civil conspiracy against FXG, Summit, and Blake Freeman (an employee of SLI). Plaintiffs now seek to amend their complaint to add two new defendants, Ashley Freeman and Brandon Freeman (also employees of SLI), and to request punitive damages on several of their claims. They also seek to add a count (Count V) against FXG, Summit, and "the Freemans" for violations of Tennessee Code Annotated § 47-50-109, which prohibits the inducement of breach of contract.

2

## II. ANALYSIS

### A. Motion to Amend Scheduling Order [Doc. 27]

In their motion to amend the scheduling order, Plaintiffs explain that FXG and SLI "requested multiple extensions on discovery," and Plaintiffs agreed to the extensions [Doc. 27 at Page ID # 370]. Plaintiffs state that they have received these defendants' interrogatory responses, but FXG and SLI had still not responded to Plaintiffs' requests for production of documents at the time of the filing of the motions to amend [*id.*].

The original scheduling order set a deadline for amending pleadings and adding parties of April 10, 2018 [Doc. 20 at Page ID # 314]. Plaintiffs complied with this deadline with the filing of the instant motion to amend the complaint. They nevertheless ask the Court to extend this deadline, "in the event that new claims or parties to be added are discovered in the documents to be produced by Defendants." [Doc. 27 at Page ID # 371]. They seem to suggest an extension to May 15, 2018 [*id.*].

Under Federal Rule of Civil Procedure 16(b)(4), a scheduling order may be modified "only for good cause." "The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements." *Inge v. Rock Fin. Corp.,* 281 F.3d 613, 625 (6th Cir. 2002) (quoting *Bradford v. DANA Corp.,* 249 F.3d 807, 809 (8th Cir. 2001)). "Another relevant consideration is possible prejudice to the party opposing the modification." *Id.; see also Moore v. Indus. Maint. Serv. of Tenn., Inc.*, 570 F. App'x 569, 577 (6th Cir. 2014).

Although no defendant has objected, the Court will deny the motion to amend the scheduling order [Doc. 27]. As explained below, the Court is granting Plaintiffs' motion to amend the complaint, allowing them to add new parties, assert additional claims, and seek new damages.

3

If after reviewing the documents they receive, Plaintiffs feel an additional amendment is necessary, they may file a new motion to amend and request an extension of the relevant deadlines at that time, which the Court will consider in due course. The Court will not amend the scheduling order to accommodate a hypothetical proposed amendment. Plaintiffs have simply failed to show good cause at this time.

### B. Motion to Amend Complaint [Doc. 26]

Rule 15 of the Federal Rules of Civil Procedure directs that, where an amendment is not made as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* Factors relevant in determining whether leave should be denied include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of the amendment." *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Leary v. Daeschner*, 349 F.3d 888, 905 (6th Cir. 2003). Although leave to amend is ordinarily freely given under Federal Rule of Civil Procedure 15, an amendment may be denied as futile if the claim sought to be added "could not withstand a Rule 12(b)(6) motion to dismiss." *See Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000).[2] A court

---

[2] To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead facts that, if true, state a claim to relief that is plausible on its face. *Bell Atlantic v. Twombly*, 550 U.S. 544, 569 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Flanory v. Bonn*, 604 F.3d 249, 252-53 (6th Cir. 2010). A court must determine not whether the claimant will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). While the court must construe the complaint in the light most favorable to the claimant and accept as true all well-pleaded factual allegations, legal conclusions and unwarranted factual inferences need not be accepted as true. *See Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999).

is prohibited from looking to facts outside the proposed amended pleading when determining whether the amendment is futile. *See id.* at 420-21.

FXG first argues that Plaintiffs should not be permitted to amend their complaint to include the newly asserted claims in Count V because those claims are barred by the applicable statute of limitations and therefore this aspect of the amendment is futile [Doc. 30 at Page ID # 382-84]. FXG contends that the "one new substantive claim is brought pursuant to the Tennessee Consumer Protection Act" (the "TCPA") which has a one-year statute of limitations, *see* Tenn. Code Ann. § 47-18-110. FXG argues RDI was aware at the end of July 2016 that FXG was not going to renew the ISP Agreement (which would torpedo RDI's deal with LLI); and TEI was aware in October 2016 that FXG was not going to approve TEI sale to LLI of the Linehaul Agreement routes. Because Plaintiffs filed suit in August 2017, and seek to add Count V in April 2018, FXG argues the new TCPA claim is time-barred.

This argument fails for the simple reason that Plaintiffs' claims in Count V are not asserted under the TCPA. Looking to the proposed amended pleading, Plaintiffs' new claims arise under Tennessee Code Annotated § 47-50-109, "Inducement of breach of contract; damages" [Doc. 31 at Page ID # 388-89; *see also* Doc. 26-1 at Page ID # 366]. The inducement of breach of contract claims have a three-year statute of limitations. *See Smith v. Rosenthal Collins Grp., LLC*, 340 F. Supp. 2d 860, 863-64 (W.D. Tenn. 2004) (citations omitted). Plaintiffs' new claims are not untimely TCPA claims.

As part of its statute of limitations argument, FXG also argues that RDI's "TCPA" claim fails because the ISP Agreement states that it "will be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania." [Doc. 30 at Page ID # 383-84]. Therefore, FXG argues, RDI "simply do[es] not have a claim under the TCPA." [*id.*at 384]. Plaintiffs point

5

out, however, that RDI's inducement claim is not based on an alleged breach of the ISP Agreement between RDI and FXG; rather it is based on FXG's alleged inducement of breach of the sales agreement between RDI and LLI, which was entered into in Tennessee [Doc. 31 at Page ID # 389]. Moreover, Plaintiffs are not asserting a TCPA claim at all. The choice of law provision in the ISP Agreement therefore does not necessarily render RDI's proposed inducement claim futile.

FXG also argues Plaintiffs should not be permitted to seek punitive damages. It argues Plaintiffs' request is untimely, and prohibited by the terms of the ISP Agreement. Both arguments fail.

Regarding the timeliness issue, FXG argues that Plaintiffs "have not identified any reason for why they now, at this late date, seek punitive damages." [Doc. 30 at Page ID # 384]. FXG claims that it is prejudiced "in how it has defended this claim" due to Plaintiffs' tardiness in requesting punitive damages [*id.* at Page ID # 385]. In explaining the timing of their motion to amend the complaint, Plaintiffs argue FXG has long been aware of their intention to file an amended complaint, and that Plaintiffs delayed filing the motion until they received discovery so as to avoid filing multiple motions to amend. Plaintiffs reiterate that the defendants were tardy in responding to their discovery requests, and that the motion to amend the complaint was filed within a week of Plaintiff receiving the defendants' responses to interrogatories [Doc. 31 at Page ID # 390].

Although Plaintiffs do not specifically explain why they did not include a request for punitive damages in their original complaint, the Court finds FXG has failed to show undue delay, bad faith, or a dilatory motive. Plaintiffs credibly explained why they waited to file their motion to amend the complaint, and FXG does not dispute the tardiness of its discovery responses. Perhaps Plaintiffs could have moved to amend their complaint sooner to seek punitive damages on

6

their existing claims, but they complied with the deadline for filing the proposed amendment. Moreover, dispositive motions are not due in this case until November 6, 2018 [Doc. 20 at Page ID # 314]; therefore, FXG still has an opportunity to narrow the issues for trial and make legal arguments against the imposition of punitive damages.

FXG also points out the ISP Agreement "sets forth terms regarding liability and damages, limiting damages to actual damages, and providing that no party will be entitled to consequential or special damages," except if the damages are incurred by willful, intentional, or grossly negligent actions [Doc. 30 at Page ID # 385; Doc. 1-2 at Page ID # 35]. Plaintiffs only assert "conclusory" allegations of willful or intentional conduct, FXG argues; therefore, any claim for punitive damages is futile. The Court rejects this argument because, again, the terms of the ISP Agreement are not necessarily dispositive and the argument would require the Court to consider facts outside the proposed amended pleading. Plaintiffs emphasize in their reply that none of the claims are based on any alleged breaches of the ISP Agreement or its terms [Doc. 31 at Page ID # 389]. To ultimately prevail, Plaintiffs will, of course, be required to produce proof and legal authority showing they are entitled to punitive damages.

Finally, FXG argues Plaintiffs should not be allowed to amend their complaint to include a request for punitive damages claim because Plaintiffs' "fundamental cause of action" fails on the merits. FXG argues:

> Here, Plaintiffs' fundamental cause of action is that FedEx Ground (along with others) somehow caused their claimed sale to LLI not to go through. What is not in dispute, however, is (1) that RDI's ISP Agreement with FedEx Ground expired on August 12, 2016; (2) FedEx Ground honored that ISP Agreement; (3) FedEx Ground, as it had every right to do, decided not to continue contracting with RDI; and (4) as a result of FedEx Ground not continuing to contract with RDI, RDI did not have anything to sell or assign to LLI. That course of events simply does not give rise to any of the claims brought by RDI, much less a late, after-the-fact

7

request for punitive damages based on specious claims for alleged misrepresentations.

[Doc. 30 at Page ID # 385]. FXG does not discuss any elements of Plaintiffs' claims or provide citation to any authority concerning the merits of Plaintiffs' claims. The Court declines to develop FXG's argument, and besides, FXG overlooks all of Plaintiffs' allegations concerning Mr. Wheeler's representations and the other circumstances surrounding the failed deal between RDI and LLI. Finally, as stated above, the Court has already concluded Plaintiffs did not unduly delay their proposed amendment.

### III. CONCLUSION

For the foregoing reasons, Plaintiffs' motion to amend complaint [Doc. 26] is **GRANTED**. Plaintiffs are **ORDERED** to file the proposed amended complaint currently attached to their motion to amend complaint [Doc. 26-1] as a separate docket entry within **SEVEN DAYS** of entry of this order. All defendants must be included in the case caption of the amended complaint.

Plaintiffs' motion to amend scheduling order [Doc. 27] is **DENIED**.

SO ORDERED.

ENTER:

                                              s/ *Susan K. Lee*
                                              SUSAN K. LEE
                                              UNITED STATES MAGISTRATE JUDGE